REQUESTED BY: Senator William E. Nichol Senator Robert L. Clark Senator Richard D. Marvel Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senators:
You have requested our opinion on the constitutionality of a vote taken in the Legislature on LB 376 on May 28, 1981. This is a bill which authorizes multibank holding companies. It was on final reading and received the affirmative votes for passage of 24 members of the Legislature and the negative votes of 24 members of the Legislature with one abstention. At that point the Lieutenant Governor, acting as presiding officer of the Legislature, cast his vote in favor of passage of the bill.
Two constitutional provisions bear upon this question. The first, Article III, section 10, provides in part, `The Lieutenant Governor shall preside, but shall vote only when the Legislature is equally divided.' Article III, section 13, provides in part, `No bill shall be passed by the Legislature unless by the assent of a majority of all members elected and the yeas and nays on the question of final passage of any bill shall be entered upon the journal.' These sections of the Constitution appear to be in conflict. Article III, section 13, provides that in order to enact a bill you must have a majority of those members elected to the Legislature; while Article III, section 10, authorizes the Lieutenant Governor to vote where the Legislature is equally divided.
Five states have considered similar questions. These states are Montana, State ex rel. Easbey v. Highway PatrolBoard, 372 P.2d 930 (Mont. 1962); Delaware, Opinion of theJustices, 225 A.2d 481 (Del. 1966); Michigan, AdvisoryOpinion on the Constitutionality of 1978 PA 426, 403 Mich. 631, 272 N.W.2d 495 (1978), and Kelley v. Secretary ofState, 112 N.W. 978 (Mich. 1907); Kansas, Coleman v.Miller, 71 P.2d 518 (Kan. 1937); and North Dakota, Stateex rel. Sanstead v. Freed, 251 N.W.2d 898 (N.D. 1977). Of these five states, two (Kansas and North Dakota) have held the Lieutenant Governor may not vote on the final passage of a bill. Two others (Delaware and Montana) have held that the Lieutenant Governor may vote on the final passage of such bills. The remaining state (Michigan) has cases holding both ways. The earlier case held that the Lieutenant Governor could not vote on the final passage of bills and resolutions. The later case, subsequent to a constitutional amendment, held that the Lieutenant Governor may vote on the final passage of bills.
We have analyzed these cases in terms of the similarity of provisions of their Constitutions and the Nebraska Constitution. While there are some differences, we believe that the differences are not significant in the opinion we herein express.
The principles of constitutional construction to be applied to these questions are not seriously in dispute. The Constitution should be construed where conflicts exist so as to give effect to each provision of the Constitution. The constitutional provision should be interpreted in light of the intention and meaning of the persons adopting those provisions. Where constitutional provisions are in conflict the later in time prevail over the earlier and finally the more specific constitutional provision where a conflict exists will prevail over the more general.
Both provisions were essentially in the same form in the Constitution of 1875. Although one has been moved from Article IV to Article III, they are substantially the same as they were at adoption. While the cases have gone both ways, we believe it is difficult to say that one provision is the more specific and the other the more general. We have found no legislative or constitutional history significant to the present question.
In addition to these considerations we have taken particular note of those portions of the North Dakota opinion in State ex rel. Sanstead, supra. The Court analyzed their history of votes where the house was equally divided. The Court concluded that the history of North Dakota was that the Lieutenant Governor had not voted in such situations. Due to the time constraints under which we have researched this issue, we were unable to make a thorough search of past votes; but, our research to date indicates that this question has not arisen in the Legislature for at least the last thirty years. We are aware of no instance in which the Lieutenant Governor, either since Nebraska has been under the Unicameral system or when it was under a two house system, has cast the deciding vote on the final passage of a bill. We also note that this is likely to be a unique circumstance in the State of Nebraska. In the future any time a similar situation would arise the only thing necessary to preclude a vote by the Lieutenant Governor would be for one of the persons opposed to passage of the bill to change his vote from nay to not voting, thus striking the tie vote. If this vote were proper this would be likely to be the only situation in which such a vote could occur in this state.
In construing these provisions together to give effect to each, we believe the proper interpretation is that the Lieutenant Governor may vote under Article III, section 10, on all matters not required by the Constitution to receive a specific number of votes of the members elected. This would include such things as amendments, procedural matters, and other ordinary business of the Legislature. However, the Lieutenant Governor would be precluded from voting on final passage of any bill by the provisions of Article III, section 13, which require a majority of the members elected to the Legislature.
This conclusion gives effect to both section 10 and section 13. It preserves the Lieutenant Governor's power under section 10 and makes effective the limitation adopted under section 13, requiring a majority of elected members to pass a bill.
Sincerely, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General